## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUE M.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-00536-MAB |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.[2]

## Procedural History

Plaintiff applied for DIB on July 15, 2017, alleging a disability onset date of January 1, 2017 (Tr. 15). After holding an evidentiary hearing, an ALJ denied the application on April 17, 2019 (Tr. 12-24). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (*See* Doc. 12).

## Issues Raised by Plaintiff

Plaintiff raises the following issue:

1. The ALJ's RFC determination was unsupported by substantial evidence as he ignored certain parts of the record, including Plaintiff's orthopedic surgeon's opinion and records as well as the severity of Plaintiff's mental health diagnoses, and "cherry picked" only parts of the record that supported his findings.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff had had not engaged in substantial gainful activity since January 1, 2017, Plaintiff's onset date (Tr. 17). She was insured for DIB through December 31, 2021 (Tr. 17). She was born on February 11, 1960 and was 56 years old on the alleged date of disability (Tr. 22). The ALJ found that Plaintiff had severe impairments of anxiety, depression, and trigger finger of the right hand[4]  (Tr. 17).

The ALJ found that Plaintiff had the RFC to do the full range of work at all exertional levels, with the following non-exertional limitations:

> she can frequently handle and finger with the right upper extremity. She can understand and remember simple instructions. She can sustain attention for extended periods of two-hour segments for simple tasks. She can tolerate co-workers and supervisors with occasional (not more than 1/3 of the time) contact with the public. She can adapt to routine changes as needed.

(Tr. 19).

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not do her past relevant work as a cashier, customer service manager, or laborer in stores (Tr. 22). However, she was not disabled because was able to do other jobs that exist in significant numbers in the national economy (Tr. 22).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the

---

[4]  Trigger finger is when one of the fingers gets stuck in a bent position. *See here* MAYO CLINIC, *Trigger Finger*, available at https://www.mayoclinic.org/diseases-conditions/trigger-finger/symptoms-causes/syc-20365100) (last visited September 22, 2021).

points and factual allegations raised by Plaintiff.

### 1.      Evidentiary Hearing

At the time of the hearing, Plaintiff was 59-years old and had a 12th grade education. Her CNA certificate had lapsed (Tr. 42). Plaintiff was represented by an attorney at the hearing on January 3, 2019. (Tr. 31).   Plaintiff lived in a mobile home at the time in Joppa, Illinois (Tr. 41). She explained that her typical day involved waking up, making coffee, and curling up on the couch with her cat (Tr. 60-61). She was not involved in any activities outside of her home, such as religious activities or social meetings, but described seeing her five grandchildren on occasion (Tr. 60-61).

The ALJ questioned Plaintiff about her prior work history, including her time working at Walmart as a cashier before being promoted to Customer Service Manager (Tr. 45-47). She also worked as a cart pusher. In these positions, Plaintiff explained she would carry items over 20 lbs., but less than 50 lbs. (Tr. 47). Plaintiff described that her anxiety began when she held the position of Customer Service Manager and, ultimately, she had to step down from this position due to anxiety (Tr. 49). She explained that she could not handle crowds of people anymore (Tr. 50). Plaintiff also explained that her anxiety impacts her ability to work because she cannot keep up with the pace of most jobs and has issues being around other people (Tr. 56). She also has memory issues (Tr. 56-57). Although Plaintiff takes Lexapro and the medical record indicated that it controlled her symptoms "pretty well," Plaintiff described still experiencing breakthrough anxiety (Tr. 58).

The ALJ also questioned Plaintiff about her medical conditions. Plaintiff described

issues with a recent mammogram, as well as experiencing high cholesterol, chest pain, anxiety, and depression (Tr. 49-51). The ALJ questioned Plaintiff about past surgeries, including a complete hysterectomy, appendectomy, and tonsillectomy (Tr. 52). In terms of medical conditions that impact her ability to do physical work or complete daily activities, Plaintiff testified that she has arthritis that causes her right trigger finger to "lock up" (Tr. 52-53). Plaintiff had steroid shots in the area as treatment for this issue (*Id.*). Plaintiff explained that she loses her grip in her right hand, with the heaviest item she can pick up being a coffee cup (Tr. 54). She also explained she cannot pick up small objects, like a table full of coins or paperclips, with her right hand (Tr. 55).

A vocational expert ("VE") also testified at the hearing. Plaintiff's attorney did not object to the testimony (Tr. 64). The VE assessed Plaintiff's prior work as a Walmart cashier to be light work at a Specific Vocational Preparation ("SVP")[5] level of 2 (Tr. 64). At times, this work could be at a medium lifting level. As for a customer service manager at Walmart, the VE determined this job had an SVP level of 7, medium lifting in the DOT, but light as performed. Finally, the cart pusher had an SVP level of 2 with medium lifting (Tr. 65). The VE was questioned about a hypothetical individual with the same age, education, and work experience as Plaintiff with the same residual functional capacity, and the VE testified that this hypothetical individual could not perform Plaintiff's prior

---

[5] A job with an SVP level of 1-2 are unskilled while those rated 3-4 are semiskilled. Anything rated a 5 or higher is considered skilled. *See here* DI 25001.001 Medical and Vocational Quick Reference Guide, https://secure.ssa.gov/poms.nsf/lnx/0425001001 (last accessed September 22, 2021).

jobs because "all three of these jobs are constantly dealing with the public" (Tr. 65). With that said, the VE determined that this hypothetical person could perform the job of an industrial cleaner, with one million positions nationwide (Tr. 66). Additionally, the hypothetical person could perform the work of a scrap sorter and a laundry laborer (Tr. 66).

Plaintiff's attorney questioned the VE, and asked if Plaintiff were off task 15% or more out of the workday on a consistent basis, would there be any work that would tolerate those absences (Tr. 66). The VE answered in the negative. The VE also testified that there were not any conflicts or issues that they needed to be aware of, as his findings were consistent with the Dictionary of Occupational Titles (Tr. 67).

### 3. Relevant Medical Records

Plaintiff submitted a series of medical records to the ALJ to aid in his determination. The records indicate that on August 18, 2016, Plaintiff sought treatment from her primary care physician, Dr. Robert Hughes, for a diagnosis of anxiety disorder, unspecified (Tr. 278). Dr. Hughes prescribed citalopram for Plaintiff's depression. During her next visit with Dr. Hughes on November 30, 2016, Plaintiff complained of experiencing anger, agitation, anxiety, and depression (Tr. 273). Dr. Hughes discontinued the citalopram and prescribed Zoloft (Tr. 274). Dr. Hughes updated Plaintiff's diagnosis to generalized anxiety disorder (Tr. 275).   Plaintiff returned to Dr. Hughes on February 15, 2017, complaining of depression, but was not experiencing, at that time, anger, agitation, or anxiety (Tr. 270-271). Dr. Hughes continued Plaintiff's prescription of Zoloft (Tr. 272).

Plaintiff returned to see Dr. Hughes on August 30, 2017 (Tr. 288). She complained of crying spells, depression, mood swings, anger, and experiencing suicidal ideation (Tr. 288). She also explained that her right middle finger locked "occasionally" and she experienced numbness, swelling, and pain while moving this finger. *Id.*

On September 11, 2017, Plaintiff was treated by Dr. Stephen Compton at Murray Orthopedics, where she was treated with injections in her trigger fingers to treat catching and locking (Tr. 320-21). During the appointment, Plaintiff explained that the pain in her right hand was worse than the left, and that anti-inflammatory medications did not improve her symptoms (Tr. 320).

On September 27, 2017, Plaintiff returned to Dr. Hughes' office, complaining of being jittery, nervous, and angry. She also explained that she was experiencing mood swings, suicidal ideations, and depressive symptoms (Tr. 285). The record indicates that she was scheduled to see a psychiatrist the next day (Tr. 287).

Plaintiff was seen again approximately 8 months later on May 30, 2018, and complained of being jittery, nervous, angry, depressed, and anxious. She complained that she was experiencing crying spells, mood swings, and suicidal ideation (Tr. 313). Soon after, on June 27, 2018, Plaintiff returned to the office, and told Dr. Hughes that she was still anxious and depressed. Additionally, she complained of trigger finger issues, so Dr. Hughes referred her again to Dr. Stephen Compton at Murray Orthopedics (Tr. 327-328). A month later, Plaintiff returned to see Dr. Hughes for anxiety symptoms again, including jitteriness, nervousness, anger, depression, and mood swings (Tr. 324). Her listed diagnoses at this appointment are generalized anxiety disorder and major

depressive disorder, recurrent, moderate (Tr. 325).

Plaintiff returned to see Dr. Compton on July 2, 2018, requesting another injection into her finger for catching and locking (Tr. 316-317). At this time, she described that her left trigger finger bothered her, as opposed to just her right (Tr. 316). Even so, during the examination, Dr. Compton noted she had a knot on her wrist that was very painful and was experiencing tenderness and right hand pain accompanied with "grind" (Tr. 317). Dr. Compton diagnosed Plaintiff with acquired trigger finger of the left hand, which was treated by the injection, and osteoarthrosis of the carpometacarpal joint of the thumb on her right hand (Tr. 318). Plaintiff was told to take anti-inflammatory medication and brace her left trigger finger as treatment.

On November 9, 2018, Plaintiff established care with Massac Memorial Clinic after moving to Illinois (Tr. 329). Plaintiff's medical notes document her history of anxiety and depression (Tr. 329). She reported to the physician that her anxiety and depression were controlled with Lexapro (Tr. 330). Additionally documented is Plaintiff's history of right trigger finger and right wrist pain, which she explained was treated by injections and wearing a brace (Tr. 330).

### 4.    State Agency Consultants' Opinions

The ALJ also considered evidence and opinions from prior administrative findings at Plaintiff's initial stages of applying for benefits. State agency consultants reviewed her file and made the following determinations.

State agency medical reviewers, Jack Reed, M.D., and Robert Culberson, M.D., reviewed Plaintiff's record, and determined that she did not have any severe physical

impairments. Specifically, they found that Plaintiff's osteoarthrosis and allied disorders were "non-severe," while her anxiety and depression were "severe" (Tr. 75).

Additionally, state agency psychological reviewers, Tonya Gonzales, Psy.D., and Jane Brake, Ph.D., reviewed the record. Doctors Brake and Gonzales found that Plaintiff could understand and remember simple and detailed instructions, sustain attention and concentration for extended periods of two hour segments for simple tasks, tolerate coworkers and supervisors with occasional contact with the public, and adapt to routine changes as needed (Tr. 21, 80, 94).

Finally, a consultative examiner, Lisa King, Psy.D., reviewed the record and determined back in September 2017, Plaintiff's capacity to understand, remember, and carry out instructions towards performance of simple, repetitive tasks was only slightly affected (Tr. 21). Dr. King also found that Plaintiff's ability to tolerate stress and pressure of day-to-day employment is impacted to a moderate degree, meaning that the individual is still able to function satisfactorily with moderate limitation (Tr. 311). Similarly, Dr. King found that Plaintiff's capacity to respond appropriately to supervisors and coworkers in work settings was limited to a moderate degree. Dr. King found Plaintiff struggled the most in her ability to sustain attention and concentration towards performance of simple repetitive tasks, as this skill was impacted to a "marked degree," meaning there is serious limitation in this area and while the ability to function is severely limited, it is not precluded (Tr. 311).

## <u>Analysis</u>

In this appeal, Plaintiff advances two main arguments to support remand, both

related to the ALJ's RFC. First, Plaintiff argues that the ALJ ignored her treating orthopedic surgeon's opinion and relied on the non-examining physicians to form the RFC related to her hand mobility and strength (Doc. 23, pp. 7-8). Second, Plaintiff argues that remand is proper because the ALJ ignored the severity of her mental health conditions, cherry-picking helpful parts of the record to support his decision and ignoring the treating notes of Dr. Hughes (Doc. 23, p. 8).

The Residual Functional Capacity ("RFC") is a measure of what an individual can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

As an initial matter, the Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). The ALJ must consider all relevant evidence. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir.

2003); 20 C.F.R. § 404.1545 (a)(1) and (3). Moreover, the ALJ must "engage sufficiently" with the medical evidence. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation and internal quotations omitted). The ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). The ALJ "cannot simply cherry-pick facts supporting a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). "If the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

Generally, Plaintiff's arguments concern the weight assigned to the state agency consultants. As background, the agency revised the regulations regarding consideration of medical opinions in early 2017.[6] The revised regulations apply to applications filed on or after March 27, 2017 and are applicable here.

The new regulation outlines, regardless of whether the medical professional is a treating doctor or not, that all medical opinions be weighed using the same considerations: (1) supportability; (2) consistency; (3) relationship with the claimant,

---

[6] 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors as appropriate. *See* 20 C.F.R. § 404.1520c(c). The first two factors, supportability and consistency, are the most important. The ALJ is required to articulate how the factors of supportability and consistency were considered, but not necessarily the rest of the factors. 20 C.F.R. § 404.1520c(b)(2).

In terms of her hand mobility, Plaintiff argues that the ALJ improperly relied on the state agency non-examining reviewers to find that Plaintiff had no exertional limitation because it was found that there were no severe physical impairments (Doc. 23, p. 7). Plaintiff argues that a plain reading of the Medical Vocational Guideline Rules 201.06 and 202.06 direct finding a claimant as disabled when they are of advanced age and *it has been determined that they have a severe impairment* (Doc. 23, p. 7). Essentially, Plaintiff argues she should have been found to have a more severe limitation in the use of her hands because of the treating orthopedic physician exam findings and diagnoses were consistent with her complaints of pain and difficulty utilizing her hands. Noticeably, Plaintiff does not point to specific parts of the record that support her argument.

Plaintiff was 56-years old when the ALJ denied her application, which puts her in the "advanced age" category. 20 C.F.R. § 404.1563(e). Unless she can do her past work, a person in the advanced age category with no transferrable skills who is limited to light work is deemed disabled under the Medical-Vocational Guidelines ("Grids") 20 C.F.R.

Pt. 404, Subpt. P, App. 2, Table 2. Here, though, Plaintiff is not limited to light work; rather, the ALJ determined that while she cannot perform her prior work due to her anxiety and depression, she can perform work at the full range of exertional levels (Tr. 19). If Plaintiff were limited to light work, though, the issue of how much handling and fingering she can do in a workday would be critical, and the ALJ would have to support his determination with the overall record, which the ALJ did in this case.

In considering the medical opinions, the ALJ determined that state agency medical reviewers[7], Jack Reed, M.D., and Robert Culberson, M.D., had "generally persuasive" opinions as they were consistent with the record as a whole and Plaintiff's testimony (Tr. 21). However, the ALJ found that the evidence relating to Plaintiff's trigger finger supported finding the limitation of frequent handling and fingering with the right upper extremity *despite* the findings of these state agency reviewers. The ALJ did not simply "fall back on the no exertional limitations of the non-examining physicians," as Plaintiff argues (*See* Doc. 23, p. 8). Rather, the ALJ determined that the record, as a whole, supported finding an additional limitation not identified by these state agency medical reviewers.

Additionally, a close look at the orthopedic physician's notes does not support Plaintiff's argument that she has more limited mobility and strength in her fingers.

---

[7] State agency physicians are deemed, by regulation, to be "highly qualified ... experts in Social Security disability evaluation" and their opinions constitute medical evidence that is considered in the disability determination process. *Hayes v. Saul*, No. 4:19-CV-15-TLS, 2020 WL 1527846, at *6 (N.D. Ind. Mar. 31, 2020) (citing to 20 C.F.R. §§ 404.1513a(b)(i), 416.913a(b)(i)); *see also* 20 C.F.R. §§ 404.1527(e), 416.927(e) (referring to §§ 404.1513a, 416.913a).

According to the record, Dr. Compton first saw Plaintiff on September 17, 2017 and gave her an injection in her trigger finger to manage pain (Tr. 320-21). She saw Dr. Compton again on July 2, 2018 for injections in both her left and right trigger fingers (Tr. 316-17). The ALJ discussed these visits in his decision, detailing that she was diagnosed with trigger finger of the right middle finger by her primary care physician in September 2017 and then saw the orthopedist who gave her a steroid injection (Tr. 20-21). The orthopedist evaluated her and revealed that she had a "5 out of 5 strength finger grip and hand intrinsic" at this appointment (Tr. 20, 320). The ALJ further discussed her next appointment in July 2018, when Plaintiff received another injection (Tr. 21). The ALJ detailed that he did limit Plaintiff to frequent handling and fingering with her right upper extremity, but that the nature of her symptoms are mild and do not warrant further limitations as the orthopedist's records indicate that she has "mild triggering with range of motion" and tenderness to palpation (Tr. 21). Plaintiff seems to be requesting the undersigned to reweigh the evidence. Plaintiff has not demonstrated that the ALJ mischaracterized the medical records. In fact, the ALJ's reasoning is supported by the medical records. If the ALJ's findings were conclusory and failed to address the record as a whole, remand would be proper. *Pamela K.S. v. Comm'r of Soc. Sec.,* No. 19-cv-1112-RJD, 2020 WL 4040908, at *10 (S.D.Ill. July 17, 2020) (citing *Moore,* 743 F.3d at 1121-22). But that is not the case here.

Plaintiff's second argument advanced to support her contention that remand is proper is similarly unavailing. Plaintiff argues that the ALJ cherry-picked parts of the record to find that she has a moderate limitation with sustained attention and

concentration as opposed to a marked limitation, as outlined by the consultative examiner, Dr. Lisa King, Psy. D. Additionally, Plaintiff criticizes the ALJ's reliance on her daily activities, arguing that it is error to equate the ability to follow a one-hour long television program, manage money, or drive with the ability to maintain attention and concentration for two-hour segments at work. The ALJ did not equate the two. Rather, he reasonably concluded that Plaintiff's ability to manage money, follow a one-hour television program, care for animals, and drive was inconsistent with Dr. King's opinion that she had marked limitation in attention and concentration towards performance of simple, repetitive tasks. (Tr. 21). The ALJ supported this finding by indicating that it was consistent with Plaintiff's testimony and medical records as well, as she receives treatment for anxiety and depression through her primary care physician and does not participate in specialized mental health treatment (Tr. 20). Additionally, Plaintiff has described that her anxiety and depression is controlled with medication albeit with some breakthrough anxiety (Tr. 20). The ALJ found that while her symptoms do impact her ability to perform everyday tasks, the evidence as a whole does not support further occupational restrictions based on these conditions beyond the ones outlined by the ALJ (Tr. 20-21). Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005). The ALJ outlined that while Plaintiff's testimony regarding her medically

determinable impairments could cause the symptoms she alleged, "these symptoms are not entirely consistent with the medical evidence and other evidence in the record" before explaining those inconsistencies (Tr. 20-21).

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. She has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

The Court finds that the ALJ considered the record as a whole and properly weighed each medical opinion in accordance with the regulations. Although Plaintiff disagrees with the weight the ALJ gave to each opinion, she does not identify any error with the ALJ's analysis that requires remand. Moreover, the ALJ spent eight single-spaced pages discussing the medical and non-medical evidence he relied on in formulating the RFC. Plaintiff raises no challenge to the ALJ's discussion of this evidence, nor does Plaintiff discuss any aspect of the medical evidence of record other than the facts noted at the outset of this Court's analysis. Plaintiff has cited no evidence demonstrating greater limitations are warranted than those incorporated by the ALJ in the RFC and has not identified any basis for reversal of the ALJ's decision. In sum, there is substantial evidence to support the ALJ's RFC determination.

## Conclusion

After careful review of the record as a whole, the Court concludes that the ALJ

committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.


**IT IS SO ORDERED.**

**DATED: September 24, 2021**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**